SUPERIOR COURT
OF THE
STATE OF DELAWARE

CRAIG A. KARSNITZ
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

March 5, 2019

Tasha M. Stevens, Esquire
Fuqua, Willard, Stevens & Schab, P.A.
26 The Circle
P.O. Box 250
Georgetown, DE 19947

Derek G. Gay, Esquire
Department of Justice
114 East Market Street
Georgetown, DE 19947

James P. Murray, Esquire
Office of the Public Defender
14 The Circle, Second Floor
Georgetown, DE 19947

RE:  ***State of Delaware v. Russell J. Hurst, Jr.***
Def ID# 1808014637
***State of Delaware v. Earl McGlotten, Jr.***
Def ID# 1808014644

Dear Counsel:

In my opinion one of the finest jurist our State has seen was

Chancellor Grover Brown. He once told me that he believed when parties took the

time and effort to appear before him, they deserved a written articulation of his

decision making. I agree and for that reason, as well as because defense counsel

referenced a case that had not been cited in her papers, I decided to give this

matter additional thought and provide a written decision. For the following reasons, I remain of the view that both Defendants' motions to suppress evidence should be denied.

## FACTS

The facts are taken from the testimony of the police officers who testified at the hearing as well as from the affidavit of Detective Timothy Gallagher prepared in support of the arrest warrants. I found the officers' testimony succinct and credible.

State Police Members of the Governor's Task Force received a tip from a confidential informant (C.I.) that defendant Russel J. Hurst ("Hurst") was dealing drugs. The police officers then quickly set up a "controlled buy" operation. Detective Gallagher traveled in his unmarked vehicle with the C.I. who was communicating electronically in "real time" with Hurst. The electronic communications with Hurst, which were preserved and provided to me, detailed the drug transaction. Price and quantity terms for the purchase of heroin were described. The C.I. suggested that the place for consummation of the transaction be the Walmart store in Seaford. Hurst initially balked at the location, apparently fearing that he was being set up. In short order he agreed to the location.

Several other police officers in unmarked cars positioned themselves in the Seaford Walmart parking lot, and observed Hurst, in a maroon Honda

Accord, pull into the parking lot. Hurst had with him an unknown fellow traveler who turned out to be his co-defendant Earl McGlotten ("McGlotten").

Hurst left his vehicle and went into the store. He shortly exited the store and stood in its entrance way. Walmart security video, which was presented at the hearing, shows Hurst standing in front of the store talking on his cell phone. He was speaking to, or electronically communicating with, the C.I. Detective Gallagher was able to hear and/or see the communications as he rode in his vehicle with the C.I.. Detective Gallagher and the C.I. rode by the front of the store and both were able to identify Hurst. When the identification was made, Gallagher notified the officers with whom he was working, and they acted quickly.

Corporal DeMato and Detective Jackson immediately drove in a separate vehicle to the front of the store. Again captured on video is Corporal DeMato throwing open the door to his vehicle, running from it, and tackling Hurst. The action was quick and dramatic, and it was obvious the officers' intent was serious. To me the actions were more than justified.[1] The officers had, through the information provided by the C.I., probable cause to believe Hurst was in the middle of committing a number of crimes. While there was no evidence the C.I. previously had provided reliable information, everything the C.I. said and did

_____

[1] There was no evidence that Hurst had a weapon; however, the officers did not know that. A quick "take down" was necessary to insure the safety of the officers and the public.

was observed by the police, and confirmed as it occurred. Hurst discussed price and quantity of drugs and Detective Gallagher observed the electronic discussion. Hurst appeared where the C.I. requested that he be. He still was arranging the drug deal when he was arrested.

Both officers who arrested Hurst testified he intentionally broke his cell phone just prior to the tackle by Corporal DeMato. I could not see that in the video, but those facts are not relevant to this decision.

In coordination with the arrest of Hurst was the officers' approach to, and arrest of, McGlotten. The only information to police had at that time was that McGlotten had traveled to the area of the drug deal with Hurst. Importantly, the officers did not know where any drugs might be. The officers had more than a reasonable suspicion drugs might be in the car.

McGlotten was taken from the vehicle, placed on the ground, and cuffed. He was "patted down" for weapons and then pulled to his feet. McGlotten told the officers he wore a back brace which had moved to an uncomfortable position, and asked that the cuffs be removed so he could adjust it. The officer complied, but in addition to adjusting the brace, McGlotten fiddled with the front of his pants. Detective Jackson, who had just finished arresting Hurst, approached McGlotten and noticed a bag with what appeared to, and turned out to be, drugs on the ground near McGlotten's feet. The only inference I can make is that

McGlotten dropped them there and tried to kick them under the vehicle.

## ANALYSIS

In my view it is unnecessary to discuss the myriad of cases addressing stop and frisk. Here the police had a C.I. with real time observations of a drug deal with Hurst as he drove. This was no different than if an officer had been sitting behind two people discussing and conducting a drug deal. That is the definition of probable cause.

The analysis is different as to McGlotten, who was not part of the discussion. However, McGlotten rode with Hurst, who was arranging the drug deal. It was more than reasonable in my view to suspect the drugs were either with Hurst, McGlotten or in the car.

One final note. At the very end of the hearing, counsel for Hurst raised the "McDonald" case as an issue with little explanation. While I was familiar with the name, it is helpful to know issues and case law in advance to apply it to the facts at hand. I have now reviewed *McDonald v. State*[2] and do not believe it changes the result here.

One premise for this argument is the claim that the affidavit supplied with the request for the arrest warrant was insufficient. It is true the warrant here does not provide all the detail provided in the State's responses to the motions to

[2] 947 A.2d 1073 (Del. 2008).

suppress or at the suppression hearing. The reason is simple and compelling. Detective Gallagher testified that he was trying to protect the identity of the C.I. from possible retaliation. Despite the relative paucity of facts in it the affidavit gave the judicial officer sufficient cause to issue the arrest warrant. It described that a concerned citizen advised the police officer that Hurst would be delivering a large quantity of heroin to a specific place, the Seaford Walmart, and that the drugs would be stamped "Freedom". It also described the officers' knowledge of Hurst from other drug investigations. The affidavit advised that the police had Hurst's driver's license photograph, and described the police officer's observation of Hurst arriving at Walmart. Finally, the affidavit described police observation of Hurst talking on his cell phone, appearing to be looking for someone. It is also noteworthy that the warrant was not issued until hours after the circumstances had occurred at Walmart, because the events justifying the police conduct occurred as matters unfolded. All of this in the context of this case supported probable cause for the issuance of Hurst's arrest warrant.

## CONCLUSION

The police officers in this case acted appropriately and with reasonable and probable cause.  The Motions to Suppress are DENIED.

**IT IS SO ORDERED**

Very truly yours,

Craig A. Karsnitz

CAK/lml

cc:    Prothonotary